# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NEW YORK

IN RE:  Chapter 11

**Yekaterina Tumayeva,**

CASE NO.: 1-21-40870-jmm

Debtor.

## DISCLOSURE STATEMENT

ALLA KACHAN, ESQ.
Attorney for Debtor Yekaterina Tumayeva
2799 Coney Island Ave, Suite 202
Brooklyn, NY 11235
Tel: (718) 513-3145
Fax: (347) 342-315
E-mail: alla@kachanlaw.com

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
> ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE
> STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS
> DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT
> BEEN APPROVED**

A.    **INTRODUCTION/NOTICE OF HEARING AND SOURCE OF INFORMATION**

Pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), the Debtor in this Chapter 11 case, provide this Disclosure Statement (the "Disclosure Statement") to all of her known creditors and other parties in interest in order to provide information deemed by the Debtor to be material and necessary to enable such creditors and parties in interest to make a reasonable informed decision in the exercise of their rights to vote on and participate in the Debtor's Chapter 11 Plan of Reorganization (the "Plan"). The Plan is annexed hereto as **Exhibit "A"**.

Terms utilized in this Disclosure Statement, if not defined herein, shall have the same meaning as such terms are used or defined in the Plan unless the context hereof requires a different meaning.

The information contained in this Disclosure Statement is based on the representations made by the Debtor in his Petition and Schedules, monthly operating reports and all other documents and information provided by the Debtor. While the information and documentation submitted herewith is believed to be accurate, it has not been subjected to a certified audit or independent review. Therefore, no representation or warranty is made as to its accuracy or completeness. The Debtor has reasonably endeavored to obtain and supply all material information on an accurate basis. The Bankruptcy Court has conducted a hearing on the adequacy of the Disclosure Statement.

**THE BANKRUPTCY COURT HAS SET _____ AS THE DATE AND TIME OF THE HEARING ON CONFIRMATION OF THE PLAN AND OBJECTIONS THERETO, WHICH HEARING WILL BE HELD IN THE UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK, 271 CADMAN PLAZA EAST, BROOKLYN, NEW YORK 11201-1800. CREDITORS OF, AND HOLDERS OF INTERESTS IN THE DEBTOR'S MAY ATTEND SUCH HEARING. THE BANKRUPTCY COURT HAS SET _____ AS THE DATE BY WHICH ALL WRITTEN OBJECTIONS TO THE PLAN SHALL BE FILED WITH THE BANKRUPTCY COURT AND SERVED UPON THE DEBTOR'S ATTORNEYS, AND UPON THE UNITED STATES TRUSTEE.**

**IN ORDER TO BE CONFIRMED, THE PLAN MUST BE ACCEPTED BY A MAJORITY IN NUMBER AND TWO-THIRDS IN AMOUNT OF THOSE VOTING IN EACH CLASS IMPAIRED UNDER THE PLAN.**

YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT WITH COUNSEL OF YOUR CHOICE.

THE DEBTOR BELIEVES THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY FOR SUCH CREDITORS THAN WOULD BE AVAILABLE UNDER ANY ALTERNATIVE PLAN OR IN A CHAPTER 7 LIQUIDATION. IN THIS REGARD, THE FOLLOWING IMPORTANT BENEFITS ARE NOTED:

THE PLAN INCORPORATES THE TERMS OF A SETTLEMENT AGREEMENT REACHED BETWEEN THE DEBTOR AND AMERICAN EXPRESS NATIONAL BANK ("AMEX"). IN ACCORDANCE WITH TERMS OF THE SETTLEMENT AGREEMENT REACHED IN THE COURSE OF THE ADVERSARIAL PROCEEDING FILED BY AMERICAN EXPRESS. THE PLAN OFFERS THE CREDITOR AMERICAN EXPRESS NATIONAL BANK, IN FULL AND FINAL SATISFACTION OF ITS' CLAIMS AGAINST THE DEBTOR, PAY A LUMP SUM PAYMENT OF $13,500.00 (THE "SETTLEMENT AMOUNT") WITHIN TEN (10) DAYS AFTER THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT APPROVING THE SAID SETTLEMENT AGREEMENT. THE REMAINING UNSECURED BALANCE OF THE CLAIM OF AMERICAN EXPRESS, ALONG WITH OTHER ALLOWED CLAIMS, SHALL BE PAID IN ACCORDANCE WITH THE TERMS TO BE OFFERED TO SIMILARLY SITUATED CLAIM HOLDERS IN THE DEBTOR'S PLAN. THE SETTLEMENT AGREEMENT IS ANNEXED HERETO AS EXHIBIT D.

THE PLAN OFFERS THE GENERAL UNSECURED CREDITORS IN THE CASE A PRO RATED PAYMENT OF 7% OF THE TOTAL AMOUNT OF UNSECURED DEBT TO BE PAYABLE WITHIN 24 MONTHS, COMMERCING ON THE EFFECTIVE DATE OF THE PLAN. NO DISTRIBUTION WOULD LIKELY BE AVAILABLE IN A CHAPTER 7 LIQUIDATION OF THE DEBTOR. THE LIQUIDATION NANLYSIS IS ANNEXED HERETO AS EXHIBIT E.

ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND RECOMMENDS THAT CREDITORS ACCEPT THE PLAN.

Other than the information set forth in this Disclosure Statement, the Debtor have not authorized any person or entity to make representations concerning the Debtor, future income, the value of her assets, or the amounts to be distributed under the Plan. Any representations or inducements made to secure your acceptance of the Plan which is other than as contained in this Disclosure Statement should not be relied upon by you in determining whether to accept or reject the Plan.

## B.    PRE-PETITION HISTORY OF THE DEBTOR AND EVENTS LEADING UP TO CHAPTER 11

The Debtor is an individual residing at 125 Oceana Dr. East # 3C, Brooklyn, NY 11235. The circumstances leading to Debtor's filing under Chapter 11 were as follows:  Due to the Covid shutdowns and restrictions, the tenants in Debtor's NJ properties stopped making rental payments. She was forced to supplement all carrying charges from my own income. Additionally, her spouse's income had similarly decreased and became irregular during the Covid period. Summarily, the decrease in rental and other family income, caused me to fall behind on her unsecured debt obligations. Seeking a way to reorganize her debt, and propose a feasible payment plan to creditors, the Debtor sought chapter 11 bankruptcy protection on April 1, 2021.

## C.    HISTORY OF THE DEBTOR'S CHAPTER 11 CASE

### 1.    Procedural Background

Debtor commenced this bankruptcy case with the filing of a voluntary petition under chapter 11 on April 1, 2021. The Debtor has continued in the possession of her property as debtor in possession, pursuant to 11 U.S.C. §§1108 and 1109. No committee of unsecured creditors has been appointed in this case.

### 2.    Debtor's Post-Petition Operations

The Debtor plans to offer a feasible plan of reorganization, providing treatment to all secured claims and administrative claims, and a pro-rated distribution to all unsecured undisputed claims and unsecured disputed claims which filed a proof of claim prior to the bar date established by court order herein.

## D.    PLAN FUNDING

The Debtor intends to fund the Plan from funds accumulated on the Debtor's DIP account from the date of the petition and from family members contributions.

## E.      <u>CLASSIFICATION, AMOUNT, AND NUMBER OF CLAIMS</u>

All Claims except Administrative Claims, Priority Tax Claims and Bankruptcy Fees placed in the Classes set forth before below. In accordance with Section 1123(a)(I) of the Bankruptcy Code, Priority Tax Claims have not been classified. A claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the description of the other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is Allowed in that Class and the Claim has not been paid, released or otherwise settled prior to the Effective Date.

**A.**      **Unclassified Claims**

**1.**      Administrative Claims

**2.**      Priority Tax Claims.

**3.**      Bankruptcy Fees.

**<u>Classes of Classes</u>**

**Class 1- *(Secured Claims)*** - Shall consist of the secured claims of CCO Mortgage Corp in the amount of $1,066,406.51 with respect to the property located at 125 Oceana Dr. East # 3C, Brooklyn, NY 11235.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $29,490.42 with respect to the property located at 14 Dexter Street Trenton, NJ, 08638.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $53,716.28 with respect to the property located at 62 Hudson Street, Trenton, NJ, 08609.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $75,424.07 with respect to the property located at 274 Hamilton Street, Trenton, NJ, 08609.

**Class II- *(Allowed General Unsecured Claims)*** - Shall consist of the general unsecured claims of American Express National Bank in the amount of $20,517.70, which was the subject of

an Adversary proceeding: *American Express National Bank v. Yekaterina Tumayeva*, Adv. Proc. No 1-21-01052-JMM. The claim was settled by terms of a settlement agreement approved by the court on April 25, 2022, and the agreed upon settlement amount of $ 13,500.00, was paid to date.

**Class III-** *(General Unsecured Claims)* **-** Shall consist of the general unsecured claims in total amount of $366,914.94.

### F.    REQUIREMENTS FOR CONFIRMATION OF THE PLAN

**1.    Confirmation and Disclosure Statement Hearing**

The Bankruptcy Court approved this Disclosure Statement at the hearing held _____. A hearing on confirmation of the Plan has been set for _____. At that hearing the Court will determine whether (a) the Plan has been accepted by the requisite number of Creditors and (b) whether the other requirements for confirmation of the Plan have been satisfied. Each Creditor will receive notice of the Confirmation Hearing.

**2.    Requirements for Confirmation**

In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires the Bankruptcy Court to make a series of determinations concerning the Plan, including that:

    a.    the Plan classifies Claims and Interests in a permissible manner;

    b.    the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code;

    c.    the proponents of the Plan have proposed the Plan in good faith;

    d.    the Plan proponent's disclosures concerning the Plan have been adequate and have included information concerning all payments and distributions to be made in connection with the Plan; and

    e.    Confirmation of the Plan will not be followed by the need for liquidation or the need for further financial reorganization of the Debtor.

The Debtor believes that all of these conditions have been met or will be met by the time of the Confirmation Hearing, and the Debtor will seek a determination of the Bankruptcy Court at the Confirmation Hearing that each of these elements has been met.

**3.    Acceptances Necessary for Confirmation.**

The Bankruptcy Code requires that the Plan place each creditor's Claim and each Interest in a class with other Claims or Interests which are substantially similar. The Debtor believes that the classification system in the Plan meets the Bankruptcy Code's standard. Although the Bankruptcy Court must independently conclude that the Plan's classification system is legally authorized, any Creditor or Interest holder who believes that the Plan has improperly classified any group of Claims or Interests may object to Confirmation of the Plan.

The Bankruptcy Code requires that the Plan be accepted by requisite votes of Creditors and Interest Holders in impaired classes. At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each Class of Creditors and Interest holders whose Claims or Interests are impaired under the Plan. Under Section 1126 of the Bankruptcy Code, any impaired Class is deemed to accept the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or Interests of Class members who have voted on the Plan.

Further, at least one impaired Class must accept the Plan, without counting the vote of Insiders of the Debtor.

Finally, unless there is unanimous acceptance of the Plan by an impaired Class, the Court must also determine that under the Plan, Class members will receive property of value as of the Effective Date of the Plan that is not less than the amount such Class members would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

**4.**    **Confirmation of the Plan without Necessary Acceptances.**

The Plan may be confirmed even if it is not accepted by all of the impaired classes if the Court finds that the Plan was accepted by at least one impaired Class and does not discriminate unfairly against, and is fair and equitable with respect to, all non-accepting impaired Classes. This provision is set forth in Section 1129(b) of the Bankruptcy Code and requires, among other things, that the holders of Claims or Interests which are impaired must either receive or retain the full value of their Claims or, if they receive less, no Class with a junior priority may receive anything.

**5.**    **Absolute Priority Rule.**

With certain exceptions, one of the requirements for confirmation is that a Plan not provide for any payments to a junior Class unless all senior Classes are paid in full. Since General Unsecured Claims are superior to the Debtor, the Debtor may not retain their Interests,

except as to property delineated by Bankruptcy Code Section 1115, unless one of three situations occur:

(i)     The Plan provides for full payment to general unsecured creditors; or

(ii)     The stockholders seeking to retain their equity interests contribute "money or money's worth" in the form of needed capital to the Reorganized Company reasonably equivalent in value to that of the equity interest sought to be retained; or

(iii)     The class of unsecured creditors waive their rights by consenting to the Plan as proposed.

**6.      Persons Entitled to Vote on the Plan.**

Only the votes of Classes whose Claims or Interests are impaired by the Plan will be counted in connection with confirmation. Generally, this includes any holders of Claims who will have their contractual rights to payment altered under the Plan. The following Classes of Creditors are entitled to vote on the Plan: Class I.

**7.      Solicitation of Acceptances.**

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with Section 1125 of the Bankruptcy Code and must be provided to creditors which have been scheduled by the Debtor or which have filed a proof of claim and are impaired under the Plan. This Disclosure Statement is intended to assist holders of Claims which are impaired in evaluating the Plan and in determining whether to accept or reject the Plan. Under the Bankruptcy Code, a determination that the Disclosure Statement contains "adequate information", as required by the Bankruptcy Code, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

**8.      Voting Procedures.**

Only Impaired Classes of Claims are entitled to vote for or against the Plan. Ballots will be mailed to the holders of Class II and III. All persons or entities entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, and signing the ballot for accepting or rejecting the Plan to be sent to them together with a copy of the Disclosure Statement and Plan, and delivering same to counsel for the Debtor: LAW OFFICES OF ALLA KACHAN, P.C., 2799 CONEY ISLAND AVENUE, SUITE 202, BROOKLYN, NEW YORK 11235. In order to be counted, all ballots must be received by LAW OFFICES OF ALLA KACHAN, P.C. on or before the date set forth in the Notice of Hearing on Confirmation of Plan. A copy of the proposed ballot has been annexed hereto as Exhibit "B".

## H.    **DESCRIPTION OF THE PLAN**

The following is a summary of certain provisions of the Plan.  IT IS NOT A COMPLETE STATEMENT OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO PROVISIONS OF THE PLAN. The Plan is annexed to this Disclosure Statement as Exhibit "A".  The Plan, which is subject to the provisions of the Bankruptcy Code, provides for treatment of all Creditors of the Debtor.  SINCE THE PLAN DEALS WITH SOPHISTICATED LEGAL CONCEPTS AND INCORPORATES THE DEFINITIONS AND REQUIREMENTS OF THE BANKRUPTCY CODE, YOU MAY WISH TO CONSULT WITH COUNSEL OF YOUR CHOICE IN MAKING ANY DECISIONS REGARDING THE PLAN.

### a.    **Summary of Classifications and Treatment of Claims and Interests Under the Plan**

1.    **Unclassified Claims:**

**Administrative Claims**

Administrative claims consist of the Debtor's duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code.  Administrative Claims will include the fees and expenses of the Debtor's Counsel, Alla Kachan, Esq., in the approximate amount of $25,000.00 through confirmation which constitutes the full pre- petition retainer, as well as $10,000.00 in accumulated post- petition legal fees.

The Debtor does not have an Accountant, retained by the Court.

The claims of Debtor's professionals shall be subject to final fee applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by this application. The Debtor estimates that the total administrative fees paid to professionals will equal $10,000.00.

**Priority Claims**

The Debtor has no priority claims.

**Statutory Bankruptcy Fee**

All Bankruptcy fees and charges assessed against the Debtor under 28 U.S.C. § 1930(a)(6) payable to the United States Trustee shall be paid in cash by the Effective Date, with any applicable interest thereon. Thereafter, such fees and any applicable interest shall continue to be paid by the Debtor until Debtor's case is closed by entry of a final decree, converted, or dismissed.

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's affairs, until the entry of a Final Decree, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Additionally, the Debtor shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

### Classes of Claims

**Class 1-** *(Secured Claims)* **-** Shall consist of the secured claims of CCO Mortgage Corp in the amount of $1,066,406.51 with respect to the property located at 125 Oceana Dr. East # 3C, Brooklyn, NY 11235. The claim will continue to be paid in accordance with the terms of the original documents.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $29,490.42 with respect to the property located at 14 Dexter Street Trenton, NJ, 08638. The claim will continue to be paid in accordance with the terms of the original documents.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $53,716.28 with respect to the property located at 62 Hudson Street, Trenton, NJ, 08609. The claim will continue to be paid in accordance with the terms of the original documents.

Shall consist of the secured claims of RoundPoint Mortgage Servicing Corporation in the amount of $75,424.07 with respect to the property located at 274 Hamilton Street, Trenton, NJ, 08609. The claim will continue to be paid in accordance with the terms of the original documents.

**Class II-** *(General Unsecured Claims)* **-** Shall consist of the general unsecured claims of American Express National Bank in the amount of $20,517.70 which was the subject of the

Adversary proceeding: *American Express National Bank v. Yekaterina Tumayeva*, Adv. Proc. No 1-21-01052-JMM. According to the terms of the Settlement agreement, approved by the Bankruptcy Court order dated April 25, 2022 (Docket # 13), the claim will be (was) paid as follows: pay a lump sum payment of $13,500.00 (the "settlement amount") within ten (10) days after the entry of an order by the bankruptcy court approving the said settlement agreement. The remaining unsecured balance of the claim of Amex, along with other allowed claims, shall be paid in accordance with the terms to be offered to similarly situated claim holders of the Class III. The agreed upon settlement amount of $ 13,500.00, was paid to date.

**Class III-** *(General Unsecured Claims)* **-** Shall consist of the general unsecured claims in total amount of $366,914.94.

| Members of Class III | Aggregate Dollar Amount of Claims in Class III | Plan Treatment of Class III |
|---|---|---|
| Wells Fargo Bank, N.A. | $3,030.21 | 7% ($212.12) dividend in 24 monthly installment payments in the amount of $8.83 |
| American Express National Bank | $21,456.39 | 7% ($1,501.94) dividend in 24 monthly installment payments in the amount of $62.58 |
| JP Morgan Chase Bank, N.A. | $19,000.00 | 7% ($1,330.00) dividend in 24 monthly installment payments in the amount of $55.41 |
| JP Morgan Chase Bank, N.A. | $4,978.82 | 7% ($348.51) dividend in 24 monthly installment payments in the amount of $14.52 |
| JP Morgan Chase Bank, N.A. | $4,636.42 | 7% ($324.54) dividend in 24 monthly installment payments in the amount of $13.52 |
| JP Morgan Chase Bank, N.A. | $13,348.48 | 7% ($934.39) dividend in 24 monthly installment payments in the amount of $38.93 |
| JP Morgan Chase Bank, N.A. | $23,041.42 | 7% ($1,612.89) dividend in 24 monthly installment payments in the amount of $67.20 |
| Bank of America, N.A. | $40,171.76 | 7% ($2,812.02) dividend in 24 monthly installment payments in the amount of $117.16 |
| Quantum3 Group LLC as agent for Comenity Bank | $10,382.44 | 7% ($726.77) dividend in 24 monthly installment payments in the amount of $30.28 |
| Goldman Sachs Bank, USA by AIS InfoSource, LP as Agent | $33,332.52 | 7% ($2,333.27) dividend in 24 monthly installment payments in the amount of $97.21 |

| SoFi Lending Corp | $69,152.87 | 7% ($4,840.70) dividend in 24 monthly installment payments in the amount of $201.69 |
| HSBC Bank USA, N.A. | $45,940.52 | 7% ($3,215.83) dividend in 24 monthly installment payments in the amount of $133.99 |
| Capital One / Bergdo | $15,053.00 | 7% ($1,053.71) dividend in 24 monthly installment payments in the amount of $43.90 |
| Capital One/SaksFirst | $6,946.00 | 7% ($486.22) dividend in 24 monthly installment payments in the amount of $20.25 |
| Citibank | $12,408.00 | 7% ($868.56) dividend in 24 monthly installment payments in the amount of $36.19 |
| Dsnb Bloomingdales | $2,032.00 | 7% ($142.24) dividend in 24 monthly installment payments in the amount of $5.9 |

As a result, Classes II and III are impaired and is entitled to vote pursuant to §1126(f) of the Bankruptcy Code.

**b.     Classes Impaired Under the Plan**

Under Section 1126 of the Code, Classes of Claims or Interests that are impaired are entitled to vote on a Plan of Reorganization. Under Section 1124 of the Bankruptcy Code, a Class of Claims or Interests is impaired unless the Plan, with respect to such Class:

1.     leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

2.     reinstates the maturity of such Claim or Interest as such maturity existed before such default; or

3.     compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; or

4.     if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the Debtor or an insider) for any pecuniary loss incurred by such holder as a result of such failure; and

5.     does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## I.     CURRENT STATEMENT OF OPERATIONS

Annexed hereto as Exhibit "C" is the Debtor's Monthly Operating Report as of May 2022.

### J.    CLAIMS OBJECTIONS

The Debtor does not anticipate filing any claim objections in the case.

### K.    FULL AND FINAL SATISFACTION

As provided in the Plan, all payments, distributions, and transfers of cash or property, under the Plan are in full and final satisfaction, settlement and release of all claims whatsoever existing as of the Confirmation Date against the Debtor, the Estate and the Reorganized Debtor, of any kind or nature whatsoever. These releases shall be effective upon Substantial Consummation of the Plan.

### L.    VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

#### 1.    Voting.

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan. Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan.

If the Court determines that any class is impaired, then a ballot to be completed by the holders of Claims of that class or classes will be enclosed herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (½) in number of allowed claims in each class voting upon the Plan.

#### 2.    The Confirmation Hearing

The Bankruptcy Court has scheduled the Confirmation Hearing to be held before the United States Bankruptcy Judge Jil Mazer-Marino, at the United States Bankruptcy Court - Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York   11201-1800 on _____. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Confirmation Hearing, or at any adjourned hearing thereof, the Bankruptcy

Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of Claims and Interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote on the Plan.

## M.    POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

The Debtor, after consultation with its professionals, has determined that there are very few, if any, preference actions. Under a cost benefit analysis, any such litigation would not increase the distribution to any class of creditors. The Debtor has agreed that no such actions will be brought. The Debtor has determined that there are no fraudulent conveyance actions to be brought in these Chapter 11 Cases.

## N.    TAX CONSEQUENCES TO ALLOWED CLAIMANTS.

The federal income tax consequences with respect to payments of Cash to Allowed Claimants in partial or full satisfaction of debt, or pursuant to a tax- free recapitalization or other restructuring, depend on the allocation of such payments to principal and interest owed on the debt. The allocation of payments between interest and principal may affect:

a.      the existence and timing of recognition of interest income by a cash basis Claimant;

b.      the existence and timing of interest deductions on a cash basis (and sometimes to an accrual basis) Debtor;

c.      the amount (and possibly the character) of worthless debt loss recognized by the Claimants;

d.      the amount of cancellation of indebtedness income recognized by the Debtor; and the amount of gain or loss recognized by the Claimant pursuant to a recapitalization under Internal Revenue Code § 368(a)(1)(E).

An Allowed Claimant will recognize ordinary income to the extent that any stock, debt securities, other premises, or cash received is attributable to interest (including original issue discount) ("OID") which has accrued while the Claimant held the debt and which the Claimant previously included in income, exceeds the fair market value of stock, debt and cash received by the Claimant which is attributable to such accrued interest (including OID).

In addition, such Claimants will realize gain on such amount equal to the excess of the fair market value of stock, debt, other premises and cash received (excluding amounts attributable to interest and discussed above) over the cost or other tax basis of the debt claims surrendered (excluding any tax basis allocated to accrued interest). The gain may be a capital gain unless the exchange has the effect of a distribution of a dividend under Internal Revenue Code § 305 (discussed below) in which case gain recognized that is not in excess of earning and profits of the Debtor will be treated as a dividend. A corporate Claimant who receives a dividend may qualify for a dividend received deduction with respect to the dividend.

The rules regarding taxation of payments to Claimants which are attributable to other accrued but unpaid income items (e.g., rents, compensation, royalties, dividends, etc.) are similar to the rules described above for payments allocated to interest.

**-Importance of Obtaining Professional Tax Assistance.**

**THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF ADVICE FROM, A TAX PROFESSIONAL. THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN THAT ARE DESCRIBED HEREIN AND THE STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN THAT ARE NOT ADDRESSED HEREIN, ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. ACCORDINGLY, EACH CLAIMANT AND EQUITY HOLDER IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

## O.    RETENTION OF JURISDICTION.

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and, _inter alia_, for the following purposes:

(i)    To determine additional objections, if any, to the allowance of Claims or Interests;

(ii)    To determine any and all applications for compensation and reimbursement of expenses for professional fees and any other fees and expenses authorized to be paid or reimburses under the Bankruptcy Code;

(iii)    To amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purposes and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(iv)    To determine any and all controversies and disputes arising under or related to the Plan;

(v)    To construe and enforce any and all provisions of the Plan;

(vi)    To determine any and all applications, motion, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court, or commenced within ninety (90) days of the Effective Date, concerning the administration of the Estate, or its property;

(vii)    To determine any and all controversies and disputes arising under or related to any settlement of an adversary proceeding or contested matter approved by the Bankruptcy Court, either before or after the Confirmation Date; and

(viii)    To enter a final Order or decree in the Debtor's Chapter 11 Case upon notice to the Office of the United States Trustee.

(ix)    To determine such other matters as may be provided for in the Plan, Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code or Bankruptcy Rules.

## P.    **FINANCIAL INFORMATION**.

The Debtor has filed with the Bankruptcy Court monthly operating reports. This financial information has not been included in this Disclosure Statement, but may be examined in the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court - Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201-1800, or, upon reasonable advance notice, at the offices of Law Offices of Alla Kachan, P.C. at 2799 Coney Island Ave, Suite 202, Brooklyn, NY 11235, during normal business hours.

## Q.    **ACCOUNTING PROCESS**

The financial information contained in this Disclosure Statement was derived from the Petition, Schedules and monthly operating reports filed by the Debtor in this case.

### R.    CREDITORS RIGHTS UNDER § 1129(a)(15)

The Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 added Bankruptcy Code Section 1129(a)(15) which created additional requirements with respect to the confirmation of a Chapter 11 plan in the case of an individual debtor. Bankruptcy Code Section 1129(a)(15) reads in pertinent part:

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to confirmation of the plan—

(A)    the value, as of the effect date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B)    the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payment, whichever is longer.

All unsecured creditors have a right to object to the Debtor's Plan. Should an unsecured creditor object to confirmation of the Debtor's Plan, the individual Debtor's Chapter 11 Plan may only be confirmed if the Plan pays unsecured creditors 100% of their Allowed Claims, or devotes five (5) years of the individual Debtor's projected disposable income to the payment of Unsecured Creditors.

**THE FAILURE BY AN UNSECURED CREDITOR TO OBJECT TO THE CONFIRMATION OF THE INDIVIDUAL DEBTOR'S PLAN OF REORGANIZATION MAY RESULT IN THE COURT CONFIRMING THE PLAN WITHOUT SATISFYING THE REQUIREMENTS OF SECTION 1129(a)(15). ALL UNSECURED CREDITORS SHOULD DISCUSS THEIR RIGHTS WITH THEIR RESPECTIVE ATTORNEY.**

### S.    DISTRIBUTIONS UNDER THE PLAN

#### 1.    The Disbursing Agent

The Reorganized Debtor and such other Person(s) as may be approved by the Reorganized Debtor, or the Bankruptcy Court, shall act as Disbursing Agent(s) under the Plan. Any such

Disbursing Agent may, with the prior approval of the Reorganized Debtor, employ or contract with other Persons to assist in or to perform the distributions required.

### 2.    Cash Payments

Cash payments made pursuant to the Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Reorganized Debtor, or by wire transfer from a domestic bank, at the option of the Reorganized Debtor.

### 3.    Transmittal of Distributions

A distribution shall be deemed made at the time such distribution is deposited in the United States mail, postage prepaid. Except as otherwise agreed with the holder of an Allowed Claim or Allowed Interest, any distribution on account of an Allowed Claim or Allowed Interest shall be distributed by mail to (1) the latest mailing address filed of record for the party entitled thereto or to a holder of a power of attorney designated by such holder to receive such distributions or (ii) if no such mailing address has been so filed, the mailing address reflected on the filed Schedules of Assets and Liabilities or in the Debtor's books and records.

### 4.    Undeliverable Distributions

If any distribution is returned to a Disbursing Agent as undeliverable, no further distributions shall be made to the holder of the Allowed Claim or Allowed Interest on which such distribution was made unless and until the Disbursing Agent or the Debtor are notified in writing of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided). Any unclaimed distribution held by a Disbursing Agent shall be accounted for separately, but the Disbursing Agent shall be under no duty to invest any such unclaimed distribution in any manner. Any holder of an Allowed Claim or Allowed Interest that does not present a Claim for an undeliverable distribution within one hundred and twenty (120) days after the date upon which a distribution is first made available to such holder shall have its right to such distribution and all subsequent distributions discharged and shall be forever barred from asserting any such Claim or Interest against the Reorganized Debtor or its property or against any other Person or entity, including the Disbursing Agent. All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code Section 347(b), be the property of the Debtor and shall be treated as determined by the Debtor in its sole and absolute discretion.

### T.     LEGAL EFFECTS OF CONFIRMATION AND EFFECTIVENESS OF THE PLAN

Within 14 days following the full administration of the estate, but not later than 18 months following the entry of an order confirming a plan, the Debtor shall file on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

The Debtor shall file and serve a Notice of the plan's effective date within three business days of the occurrence of the Effective date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the Plan and any agreements or Orders entered in connection therewith, on and after the Effective Date and subject to the payments to be made under the Plan, and that:

the rights afforded in the Plan, and the treatment of all Claims and Interests thereunder, shall be in exchange for, and in complete satisfaction, discharge, and release of all Claims, (including without limitation, all Administrative Claims, Secured Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Dates)), against the Debtor and the Reorganized Debtor, or any of their assets or properties and any liability thereunder. all substantive or obligations of the Debtor shall be terminated, and the Debtor and the Reorganized Debtor shall be deemed discharged and released to the fullest extent permitted by Bankruptcy Code Section 1141 from all Claims that arose prior to the Effective Date against the Debtor and the Reorganized Debtor or their property or assets, (including without limitation, all Administrative Claims, Secured Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Dates)), and all debts of the kind specified in Bankruptcy Code Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. This discharge and release shall be effective in each case whether or not: (i) a proof of claim or proof of interest based on such Claim, Administrative Claim, or Interest is Filed or deemed Filed pursuant to Bankruptcy Code Section 501, (ii) a Claim, Administrative Claim, is Allowed pursuant to the Bankruptcy Code, or (iii) the holder of a Claim, Administrative Claim has accepted the Plan. Pursuant to § 1141(d)(1) of the Bankruptcy Code, Confirmation shall discharge the Debtor from any Claim that arose prior to Confirmation whether or not the Holder of the Claim has accepted or rejected this Plan, except that (i) pursuant to § 1141(d)(2) of the Bankruptcy Code, the Debtor will not be discharged from any debt excepted from discharge under § 523 of the Bankruptcy Code and

(b) pursuant to § 1141(d)(5)(A), Confirmation does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan; In the event a final decree is entered prior to the completion of all payments under this Plan, the Debtor are authorized to reopen their case to obtain a discharge;

      **a.**      all Persons and Governmental Units shall be permanently enjoined by Bankruptcy Code Section 524 from asserting against the Debtor, its successors, including the Reorganized Debtor, or their assets or properties, any other further Claims, or Administrative Claims, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. The discharge shall void any judgment against the Debtor and the Reorganized Debtor at any time obtained to the extent that it relates to a Claim, or Administrative Claim, that has been discharged or terminated.

      **b.**      all Persons and Governmental Units who have held, currently hold, or may hold a Claim or Administrative Claim, discharged or terminated pursuant to the terms of the Plan shall be permanently enjoined by Bankruptcy Code Section 524 from taking any of the following actions on account of any such discharged Claim or Administrative Claim: (i) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor, their successors, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor or the Reorganized Debtor, their successors, assets, or properties; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, their successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor, their successors, assets, or properties; and (v) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Person or Governmental Unit violating such injunction may be liable for actual damages, including costs and attorneys' fees and, in appropriate circumstances, punitive damages; and

      **c.**      all Persons and Governmental Units who have held, currently hold, or may hold a Claim or Administrative Claim, discharged or terminated pursuant to the terms of the Plan shall be permanently enjoined by Bankruptcy Code Section 524 from commencing or continuing in any manner any action or other proceeding against any party on account of a Claim or cause of action that was property of the Estate, including, without limitation, any derivative Claims capable of being

brought on behalf of the Debtor or the Reorganized Debtor, and all such Claims and causes of action shall remain exclusively vested in the Debtor and the Reorganized Debtor to the maximum extent such Claims and causes of action were vested in the Debtor. The Plan shall be binding upon and govern the acts of all Persons including, without limitation, all holders of Claims and Administrative Claims, all filing agents or officers, title agents or companies, recorders, registrars, administrative agencies, Governmental Units and departments, agencies or officials thereof, secretaries of state, and all other Persons who may be required by law, the duties of their office, or contract to accept, file, register, record, or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the assets of the Debtor or the Reorganized Debtor.

**d.**          Neither the Debtor, the Reorganized Debtor, nor counsel to the Debtor or any Professional Person employed in the Chapter 11 Cases, nor any of their respective members, shareholders, officers, directors, employees, attorneys, advisors or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for willful misconduct, fraud, breach or fiduciary duty or gross negligence. Furthermore, nothing in the Plan shall limit the liability of the professionals of the Debtor to their respective clients for malpractice pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

**e.**          Notwithstanding any of the foregoing, the Debtor's discharge is governed by the provisions of Bankruptcy Code Section 1141(d)(5) which states as follows:

"In a case in which the Debtor is an individual –

(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B) at any time after the confirmation of the plan and after notice and a hearing the court may grant a discharge to the Debtor who has not completed payments under the plan if – (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim of the estate of the Debtor had been liquidated and under chapter 7 on such date; and (ii) modification of the plan under Section 1127 is not practicable; and

(C) unless after notice and a hearing held not more than ten (10) days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that – (i) section 522(q)(1) may be applicable to the Debtor; and (ii) there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

The Debtor will receive a discharge after completion of payments pursuant to 11 USC 1141(d)(5)(A).

### 2.    Re vesting of Property of the Estate and Release of Liens

Except as otherwise provided in the Plan, any contract, instrument, or other agreement or document created in connection with the Plan, or the Confirmation Order, on the Effective Date, all Property of the Estate, wherever situated, shall be re vested in the Reorganized Debtor, and except as set forth herein shall be free and clear of all Claims, mortgages, deeds of trust, liens, security interests, encumbrances, and other interests of any Person, and the Reorganized Debtor may thereafter operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without the supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York, and the guidelines and requirements of the Office of the United States Trustee.

### 3.    Votes Solicited in Good Faith

The Debtor have, and upon Confirmation of the Plan will be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtor (and each of its affiliates, agents, directors, officers, members, employees, advisors, and attorneys if any) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and therefore has not been, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distributions made under the Plan.

### 4.    Administrative Claims Incurred After the Effective Date

Administrative Claims incurred by the Debtor after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without application for or Bankruptcy Court approval.

### U.    MODIFICATION OR REVOCATION OF THE PLAN

Subject to the restrictions on modifications set forth in Bankruptcy Code Section 1127, the Debtor and the Reorganized Debtor reserve the right to alter, amend, or modify the Plan before or after the Effective Date. No alterations, amendments, or modifications may be made by any party except the Debtor or the Reorganized Debtor. If the Plan is modified by the Debtor or the Reorganized Debtor such entity will give notice of the amendment or modification to the U.S. Trustee. A hearing on such issues and any re solicitation of ballots may significantly delay Confirmation and, consequently, significantly delay distributions under the Plan.

The provisions of the Plan are not severable unless such severance is agreed to by the Debtor or the Reorganized Debtor and such severance would constitute a permissible modification of the Plan pursuant to Bankruptcy Code Section 1127.

### V.    SUMMARY OF CERTAIN OTHER PROVISIONS OF THE PLAN

**1.    Setoffs**

The Debtor does not foresee setting off against the Allowed Claims of any creditor under the plan.

### W.    MEANS OF IMPLEMENTING THE PLAN

The funds required for confirmation will come both from funds accumulated on the Debtor's DIP account up through the date of the Plan filing, the Debtors monthly income, and to the extent necessary, supplemented by contributions from the Debtor's Spouse. The payments contemplated by the Plan, will commence on the Effective Date of the Plan.

The claim of American Express National Bank, was settled pursuant to terms of the Settlement Agreement, approved by the Court, attached as Exhibit "D" to the Debtor's Disclosure statement, which terms and conditions are incorporated and part of the Plan. The settlement payment under the agreement was made by the Debtor on May 4, 2022.

### X.    EVENTS OF DEFAULT

It shall be an event of default if the Reorganized Debtor fail to make any payment as provided in the Plan.

Upon written receipt from any creditor of notice of default, the Reorganized Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) day period, the creditors shall take no action to terminate this Plan. If such default is cured by the Reorganized Debtor within said thirty (30) day period, then the Plan shall continue in full force and effect. Notices of default shall be sent to the Reorganized Debtor and the Debtor's attorneys, Law Offices of Alla Kachan, P.C., by overnight and electronic mail to: Law Offices of Alla Kachan, P.C., 2799 Coney Island Ave, Suite 202, Brooklyn, NY 11235, alla@kachanlaw.com.

## Y.    **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

If the Plan is not confirmed and consummated, the alternatives to the Plan include dismissal and resolution of the claims in an alternate venue.

## CONCLUSION

The Debtor believes that its Plan of Reorganization will result in creditors receiving more than they would under a hypothetical Chapter 7 liquidation and believes that Confirmation of the Plan of Reorganization is in the best interests of creditors and interest holders of the Debtor.

Accordingly, the Debtor urges all Creditors to accept the Plan.

Dated: Brooklyn, New York
      June 14, *2022*

*/s/ Yekaterina Tumayeva*
Yekaterina Tumayeva

*/s/ Alla Kachan*
Alla Kachan, Esq.
Law Offices of Alla Kachan, PC
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718)-513-3145
Fax.: (347)-342-3156